STATE OF NEBRASKA, APPELLANT, V. ALAN R. COTTON, ALSO
KNOWN AS ELLIOT STONE ET AL., APPELLEE.
519 N.W.2d 1

Filed June 14, 1994.    Nos. A-94-166, A-94-167.

Michael D. Wellman, Sarpy County Attorney, and Mark P. Reynolds for appellant.

Julie E. Bear, of Reinsch & Slattery, P.C., for appellee.

SIEVERS, Chief Judge, and CONNOLLY and IRWIN, Judges.

IRWIN, Judge.

## INTRODUCTION

The defendant, Alan R. Cotton, also known as Elliot Stone, pled guilty to issuing a bad check and to two counts of forgery in the district court for Sarpy County, all three being in sufficient amounts to constitute a felony. The Sarpy County Attorney's office has filed appeals pursuant to Neb. Rev. Stat. § 29-2320 (Cum. Supp. 1992), claiming that the sentences imposed on the defendant are excessively lenient. After reviewing the record and considering all of the facts and circumstances surrounding this case, we find that the sentences are excessively lenient and should be modified by the imposition of greater sentences.

## PLEAS AND SENTENCES

On January 10, 1994, the defendant was found guilty of various charges in two separate cases heard before one of the

judges of the district court for Sarpy County. This opinion disposes of both cases. In case No. A-94-167, pursuant to a plea agreement, the defendant pled guilty to one count of issuing bad checks, more than $1,500, a Class III felony. See Neb. Rev. Stat. § 28-611 (Cum. Supp. 1992). This offense carries a possible sentence of 1 to 20 years. In case No. A-94-166, the defendant pled guilty to two counts of second degree forgery pursuant to a plea agreement. Each count was sufficient to constitute a Class IV felony, which carries a potential sentence of 0 to 5 years. See Neb. Rev. Stat. §§ 28-603 and 28-105 (Reissue 1989). According to the presentence investigation report (PSI), the plea agreements consisted of the defendant's entry of the above-mentioned guilty pleas in return for the State's forbearance from pursuing habitual criminal allegations in either of the two cases and the dismissal of other forgery charges.

The defendant was sentenced to a 5-year term of probation in both cases. In addition to the standard probational conditions, he was ordered to confinement in the county jail for 180 days, with credit for 124 days served prior to sentencing. He was also ordered to pay restitution in the amount of $2,434.54. The terms of incarceration, contained in each probation order, were to be served concurrently.

## ASSIGNMENT OF ERROR

The State alleges that

> [t]he court below abused its discretion in sentencing [defendant] to a term of probation when [defendant] had previously been convicted of nine felony offenses, when [defendant] had been incarcerated for those offenses, when [defendant] was on probation at the time the three instant felonies were committed, when [defendant] had just been paroled from his incarceration, when [defendant] had four active warrants for his arrest, and when [defendant] had failed to comply with seven different traffic citations.

## STANDARD OF REVIEW

In a case where the State maintains that a sentence imposed on a defendant is excessively lenient, the standard of

review is whether the sentencing court abused its discretion in the sentence imposed. *State v. Wojcik*, 238 Neb. 863, 472 N.W.2d 732 (1991).

A judicial abuse of discretion does not denote or imply improper motive, bad faith, or intentional wrong by a judge, but requires the reasons or rulings of a trial judge to be clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. See, *State v. Trackwell*, 244 Neb. 925, 509 N.W.2d 638 (1994); *State v. Riley*, 242 Neb. 887, 497 N.W.2d 23 (1993); *Stewart v. Amigo's Restaurant*, 240 Neb. 53, 480 N.W.2d 211 (1992).

## DISCUSSION

*Factual Background.*

The record establishes that as of January 7, 1994, the Sarpy County Attorney's office had received more than 1,800 dollars' worth of insufficient-fund checks written by the defendant. All of these checks were written between June 28 and July 25, 1993. We also glean from the PSI that the defendant apparently opened two checking accounts and wrote at least two forged checks, which totaled approximately $475. The PSI sets out 27 aliases which the defendant has been known to use.

At the time the PSI was drafted, the defendant was 32 years old; unmarried; and had two minor children, ages 10 and 1. His educational experience includes a high school diploma and some college credits. It is apparent from the record that the defendant has never held a job. The PSI states under the "Employment Analysis" section that

> [t]he defendant reported that he has been self-employed at A-Ace For It All Painting and Roofing Company for seven or eight months. He showed [the probation officer] a business card. When he inquired about work release, he then stated that he really hasn't gotten the business started yet. . . . He said that he has supported himself as a free-lance writer, and he also lived on grants he had obtained to attend school.

His criminal history consists of two typewritten pages. We will note only those items from that list that contain felony charges, convictions, and sentences. In 1986, the defendant was

convicted of two counts of theft committed in 1980 in Minnesota and served 150 days. In 1983, the defendant was convicted in Nebraska of possession of a short shotgun in 1982, a felony for which he served 7 months. In 1987, he was convicted of two counts of first degree robbery committed in 1984 in Oregon and was sentenced to 10 years in jail. It appears he was paroled less than 3 years after he was sentenced. In 1986, he was convicted of forgery and was sentenced to 5 years' confinement in a federal prison. Apparently at the same time, he also was convicted of being a felon in possession of a firearm, receiving a 2-year sentence for that conviction. In 1992, the defendant was convicted of interstate transfer of stolen property and wire fraud, for which he was sentenced to 11 months in federal prison and 3 years' probation, respectively.

The interviewing probation officer noted in the PSI that

[a]lthough convicted of [several] offenses, he failed to appear for sentencing and would relocate to another state. Even when extradited, he would be granted bond and would again fail to appear for sentencing. It was not until 1986 that he was incarcerated for four consecutive years. He was sent to Federal Prison in Rochester, MN for Forgery of a U.S. Treasury Check and Felon in Possession of a Firearm. He was there for six months and transferred to the Federal Prison in Phoenix, AZ. He was allowed to serve his Minnesota state time for the 1980 offense concurrent with the Federal offense. While there, he was extradited to Oregon and sentenced to 10 years for Robbery. He paroled from Phoenix in 1988, and was transferred to Oregon State Penitentiary. He was paroled from there in 1990. In 1992, he was incarcerated in Littleton, CO prison for Interstate Transfer of Stolen Property and Wire Fraud. He was paroled from there in May, 1993 and moved to Omaha, where he commenced writing bad checks in June, 1993. He is a personable young man who continues to demonstrate that he will prey upon society whenever and to whatever degree when it appears to be to his benefit.

The defendant reported in his PSI interview that he has a

problem with alcohol. He stated that for the last 3 years he "needed a 16 oz. bottle of malt liquor daily, just to wake up." He also stated that he "was drinking a six-pack of beer plus a half pint of brandy daily." The veracity of this professed alcohol problem is affected by the fact that the defendant spent most of the last 3 years in jail.

Also noteworthy in the PSI is the "Defendant's Statement," wherein he states, " 'Opened my account, and then wrote checks off of my account. The same thing with the other checks, I just wrote the checks off.' "

*Statutory Criteria.*

Neb. Rev. Stat. § 29-2322 (Cum. Supp. 1992) provides in part:

> [T]he appellate court, upon a review of the record, shall determine whether the sentence imposed is excessively lenient, having regard for:
>
> (1) The nature and circumstances of the offense;
>
> (2) The history and characteristics of the defendant;
>
> (3) The need for the sentence imposed:
>
> (a) To afford adequate deterrence to criminal conduct;
>
> (b) To protect the public from further crimes of the defendant;
>
> (c) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and
>
> (d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and
>
> (4) Any other matters appearing in the record which the appellate court deems pertinent.

After reviewing the record in this case, considering the above standards, we have determined that the sentences imposed are excessively lenient.

*Interfacing Statutory Criteria and Facts.*

We recognize that the State, as part of the plea agreement, did not pursue the habitual criminal charge. We are expressing no opinion regarding that action. However, the defendant's adult life appears to be exactly that, the life of a career criminal.

The amount of time that the defendant has spent pursuing crime and experiencing the punishment that results from such acts represents a very large portion of his adult life. He appears to be engaged in a downward spiral of nonproductive living, and his persona is unquestionably that of a criminal. We have reviewed the record and the defendant's assertions that his life of crime has come to an end. We are convinced at this point that the thread of criminal actions running through the defendant's life has not yet reached its end. The defendant is not without insight into his criminal past. In a letter to the trial judge prior to sentencing, he wrote, "Your Honor, I am facing one to thirty years for three non-violent crimes. I will be the first to admit, my record is not the best. . . . I have a family now, and I realize that I am not getting any younger . . . ." The fact that these crimes were "non-violent" is fortunate in the respect that no one has suffered emotional or physical injury as a result of these crimes. However, the various persons and entities who were affected by the defendant's dishonest and fraudulent acts and who have lost hundreds of dollars have suffered damage.

The defendant is correct when he says that his record "is not the best." This was also recognized by the trial judge:

> When I look at the record, you have a long record. I don't know how many years you've been in prison since you were a teenager, but it's a long time.
>
> It appears that you were paroled in May from the state of Colorado, in 1993. You got some checkbooks and began writing a number of bad checks. And it's just like an iceberg, I think we just see the tip of them. There's some aliases that you used.

In the past, the defendant has been given the opportunity to board the bus of rehabilitation, yet he has refused to complete the journey. The defendant points out the potential damage and harm to his family that will result in the event of his incarceration. A heartfelt letter composed by the woman with whom the defendant was recently residing and who is the mother of one of his children has been read and is truly touching in its message and emotion. However, it is the defendant, and not the criminal justice system, who has created the hurt and suffering that is bound to result from his

incarceration. The sentences imposed by the trial court are more lenient than the sentence imposed almost 8 years before regarding a felony forgery charge. As this court stated in *State v. Ummel*, 1 Neb. App. 541, 546, 500 N.W.2d 191, 194 (1993), wherein a criminal defendant convicted of forgery received sentences more lenient than a prior sentence for aiding and abetting forgery, "[i]t is unlikely that lesser sentences than [defendant] has received in the past will serve as deterrents to [defendant] committing further crimes in the future."

Appeals where the State contends that a sentence is excessively lenient must of necessity be reviewed by an appellate court on a case-by-case basis. *Ummel, supra.* Because of this standard of review, we are unable to set out with a great degree of precision any standards other than those that are set forth by the provisions of § 29-2322.

We take note of *State v. Winsley*, 223 Neb. 788, 393 N.W.2d 723 (1986). In *Winsley*, the defendant had previously been placed on probation on several occasions and each time continued to violate the law. While, admittedly, such violations were some 10 years prior to his sentencing on appeal, the Nebraska Supreme Court held that the defendant had been given an opportunity to rehabilitate and had elected not to take advantage of that opportunity. The court set aside the defendant's sentence as excessively lenient and imposed a greater sentence. The facts of the present case provide an even better argument for the imposition of a greater sentence. The defendant, while still on parole, was convicted of committing three felonies. The sentences imposed upon the defendant do not reflect the seriousness of the offenses, nor do they promote respect for the law or provide a just punishment for the crimes he committed. These are all factors that must be considered under § 29-2322.

We find nothing in the record that would refute the conclusion reached by the probation officer that this young man will continue to "prey upon society whenever and to whatever degree when it appears to be to his benefit."

In reaching our conclusion, we are mindful of the opinions of the Nebraska Supreme Court and the Nebraska Court of Appeals regarding other excessively lenient sentence appeals.

Therefore, we set aside the sentences previously imposed by the district court and impose our own greater sentences. See *State v. Winsley, supra.* It is therefore ordered that the defendant, Alan R. Cotton, also known as Elliot Stone, be committed to the Department of Correctional Services regarding case No. A-94-166 for a period of not less than 20 months nor more than 5 years on both counts and regarding the one count in case No. A-94-167 for a period of not less than 3 nor more than 5 years. All sentences are to be served consecutively, with credit for all time spent in custody either awaiting disposition in this matter or while this matter has been on appeal. The defendant is to pay the costs of the action in the district court for Sarpy County as well as the costs of this appeal. It is further ordered that the defendant be remanded to the custody of the Sarpy County sheriff for placement in the Sarpy County jail pending transportation to the Department of Correctional Services in accordance with the sentences imposed by this opinion.

SENTENCE MODIFIED.